IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACE AMERICAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 06 C 4661 |
| | ) | |
| ELIXIR INDUSTRIES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pace American, Inc. ("Pace") filed a two-count complaint against defendant Elixir Industries ("Elixir") for breach of contract and unjust enrichment, claiming that it was overcharged for purchases of aluminum coil from Elixir between the years 1996 and 2003. Before the court is defendant's motion for summary judgment, which, for the following reasons, is granted.

### Uncontested facts[1]

Pace, a Delaware corporation with its principal place of business in Illinois, is one of the largest manufacturers of enclosed cargo and auto trailers in the world (def's stmt. ¶¶ 1, 3). Aluminum coil is one of the primary components used in Pace's manufacture of trailers (id., ¶ 17). Pace purchases aluminum coil, among other things, from Elixir, a California corporation (id., ¶¶ 4, 7). Between 1996 and 2003, Pace purchased approximately 34 million

---

[1] Pace fails to admit or deny several facts in Elixir's Local Rule 56.1(a) Statement of Uncontested Material Facts (def's stmt.) on the basis that they are "irrelevant and not material to issues to be decided on summary judgment" (see e.g. Plaintiff's Response to Def.'s Statement, ¶¶ 16, 19, 29, 31, 32) (plf's resp.). In some cases we disagree that the facts are immaterial. "Where either party denies only the materiality of the opposing party's statement, claims it is irrelevant, or makes a general denial of facts without offering citation to the record, the court will deem the response an admission for the purpose of determining the existence of genuine and material disputes of fact." Wagenknecht v. Village Motors, LLC, 2006 WL 533367, *1 n. 1 (N.D. Ill. Mar. 2, 2006) (citing Ammons v. Aramark Unif. Servs., 368 F.3d 809, 817-18 (7th Cir. 2004)). These facts are therefore deemed admitted.

pounds of aluminum coil – some 9,756 coils – for which it was charged on a per-pound basis (*id.*, ¶¶ 10, 48).

Aluminum coil is aluminum in sheet form, wrapped around a core in the form of a coil (*id.*, ¶ 15). The core is made of fiber and helps the aluminum coil maintain its shape (*id.*, ¶¶ 13, 19). Receiving aluminum in coil form (less expensive than aluminum sheets) allows Pace to process the aluminum on its decoiler machine, and to cut the aluminum to customers' specifications (*id.*, ¶¶ 16, 19).

Elixir does not manufacture the aluminum coil; it is a supplier (*id.*, ¶ 27). Elixir's customers may choose which mill or manufacturer will supply the aluminum coil, which Elixir then inventories and resells to its customers, after applying a mark-up (*id.*, ¶ 28). Pace chose to purchase aluminum coil manufactured by Nichols Aluminum ("Nichols") (*id.*, ¶ 29). Pace placed its orders via an Elixir invoice, and that was the agreement between the parties (*id.*, ¶ 9). Nichols' and Elixir's practice was to include the weight of the fiber core in the total weight of the aluminum coil (*id.*, ¶ 31-32). This practice was not limited to sales to Pace (*id.*).

When Pace received a shipment of aluminum coil, an employee verified that the product was received and that the quantities matched what was listed on the invoice (plf's resp., ¶ 52). It was not, however, Pace's standard practice to weigh the aluminum coil to verify Elixir's representations (*id.*, ¶ 53). Pace did not have a scale at its facility capable of weighing the aluminum coils until 2005 (plf's stmt. of add. facts, ¶ 8).

Around October 2005, two years after Pace had stopped ordering aluminum coil from Elixir, Pace discovered that Elixir had been including the weight of the fiber core in the total weight of each shipment (*id.*, ¶ 3; def's stmt., ¶ 47). When Pace inquired about this practice, Elixir confirmed that it had been including the core weight (def's stmt., ¶ 70). However, prior

to 2005, no one at Pace had ever inquired of Elixir as to whether the core weight was being included[2] *(id.,* ¶ 67).

On August 2, 2006, Pace filed suit in the Circuit Court of Cook County (def's stmt., ¶ 76). Elixir removed to federal court on the basis of complete diversity between the parties. Pace's amended complaint alleges breach of contract and unjust enrichment, and Pace seeks to recover approximately $523,409, the amount it claims it overpaid to Elixir between the years 1996 and 2003 *(id.,* ¶ 5).

## Discussion

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must evaluate admissible evidence in the light most favorable to the non-moving party; on summary judgment a court may not make credibility determinations or weigh evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must demonstrate affirmatively that there is no genuine issue of material fact that requires a trial to resolve. Celotex Corp., 477 U.S. at 324. Only when a reasonable jury could find for the party opposing the motion based on the record as a whole does a genuine issue for trial exist. Freeland v. Enodis Corp., 540 F.3d 721, 737 (7th Cir. 2008).

## I. Breach of contract claims

Because the transactions at issue here constitute contracts for the sale of goods, they are are governed by the Uniform Commercial Code ("UCC"), as incorporated into Illinois law at

---

[2] At some point during between 1996 and 2003, the parties held a meeting at which this issue may have been discussed, but they dispute the content of that conversation (def.'s stmt. ¶¶ 45-46).

810 ILCS 5/1 *et seq.* Ryan v. Wersi Electronics GmbH & Co., 3 F.3d 174, 181 (7th Cir. 1993).

### A. Statute of limitations

Elixir's first argument is that the UCC's four-year statute of limitations bars Pace's claims on any deliveries made prior to August 2, 2002, or four years before Pace filed its complaint. 810 ILCS 5/2-725. This argument relates to only a portion of the sales. A cause of action accrues when the breach occurs, regardless of when the aggrieved party learns of the breach. *Id.* at § 2-725(2). Pace responds that Elixir fraudulently concealed the inclusion of the weight of the fiber core in the total weight of its shipments to Pace, thus tolling the statute of limitations until Pace discovered the alleged wrongdoing in 2005.

To prove fraudulent concealment, the plaintiff must show that the defendant's affirmative acts or representations were designed to prevent, and in fact did prevent the plaintiff from discovering his claim. Gredell v. Wyeth Laboratories, Inc., 803 N.E.2d 541, 548 (Ill. App. 1 Dist. 2004) (citations omitted). The plaintiff must show that the defendant knew the acts or misrepresentations were false and made with the intent to deceive him and that he detrimentally relied on them such that he was lulled or induced to delay filing suit until after the statute of limitations expired. *Id.* (citations omitted). Whether the plaintiff's reliance on the defendant's representations is justified is usually a question of fact, but not if the undisputed facts make it apparent that only one conclusion can be drawn. Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd., 876 N.E.2d 218, 229 (7th Cir. 2007) (applying Illinois law). Mere silence by the defendant and failure by the plaintiff to learn of his cause of action do not amount to fraudulent concealment. Gredell, 803 N.E.2d at 548 (citation omitted).

In support of its contention that Elixir engaged in affirmative acts designed to prevent

Pace from discovering the inclusion of the core weight, Pace cites its national purchasing manager John Cook's statement that Pace would pay only for the "usable product" it purchased (plf's resp. to def's SJ mot., p.5). Cook stated that he had "many conversations" with Elixir employee Bill Roberts, from which it was "obvious" that Pace would not be paying for the weight of the core (plf's stmt. of add. facts, exh. A), but that he, Cook, never specifically asked Roberts whether Elixir included the weight of the core in the total weight, and Roberts never offered that information (def's resp. to plf's stmt. of add. facts, exh. B, p.63). Elixir's behavior therefore falls into the category of "mere silence," rather than an affirmative act. Nothing in the record suggests that Elixir affirmatively misled Pace. Indeed, once Pace asked Elixir about the issue in 2005, Elixir replied, truthfully, that the weight of the core had been included in the total weight of each shipment.

Pace also contends that Elixir "surreptitiously" charged Pace for the core by subtracting the weight of the core from the amount of coil ordered and then sending Pace a smaller amount of usable aluminum (plf's resp. to def.'s SJ mot., p.6). However, Pace's president admitted that he did not know whether Nichols or Elixir produced the label that contained the allegedly incorrect information (def's stmt. exh. 1, p.93). As such, Pace has not shown that Elixir engaged in acts that were false and intended to deceive.

Elixir also argues that Pace cannot claim fraudulent concealment because it failed to exercise ordinary diligence to ascertain Elixir's calculation of the weight of the aluminum coils (def's SJ mot., p.7). Fraudulent concealment is inapplicable where the plaintiff had the ability to obtain the information necessary to pursue his claim. <u>Int'l Star Registry of Ill. v. ABC Radio Network, Inc.</u>, 451 F. Supp. 2d 982, 987 (N.D. Ill. 2006) (applying Illinois law). If "ample opportunity" existed to discover the truth, then the plaintiff's reliance on the

defendant's representations is not justified. <u>Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor</u>, 692 N.E.2d 812, 818 (Ill. App. 1 Dist. 1998). That is to say, the plaintiff has a duty to exercise "ordinary diligence" in attempting to ascertain whether to rely on the defendant's representations. <u>Int'l Star Registry</u>, 451 F. Supp. 2d at 987.

In <u>Int'l Star Registry</u>, the plaintiff had an oral contract with the defendant, ABC Radio Networks, from 1984-2004 to run its ads on air. <i>Id.</i> at 985. Until 2004, the plaintiff never asked the defendant for documentation confirming that the ads were being aired as agreed in the contract. Once the plaintiff obtained this information, it concluded that the defendant had failed to air the proper quantity of ads for the entire 20 years of the contract, and sought compensation for the entire period. In declining to extend the limitations period beyond the statutory period, the court found that the plaintiff failed to exercise ordinary diligence by not evaluating the defendant's performance for 20 years, even though "it could readily have done so." <i>Id.</i> at 987.

Here, Pace claims that it exercised ordinary diligence by verifying that the quantity delivered matched the quantity invoiced. With respect to the weight, however, Pace claims it had no scale at its facilities to weigh the coil, and the difference of less than 40 pounds was not obvious to the naked eye (pl's resp. to def.'s SJ mot., p. 7). But Pace admitted that it could have weighed the coils before it obtained a scale (def's stmt. exh. 9, p. 89).[3] Pace's contention that it did not have a scale capable of weighing the aluminum coils until 2005 does not mean that it was incapable of weighing them. Moreover, at some point during the seven years that Pace purchased aluminum coil from Elixir, it could have asked whether the weight of the fiber

---

[3] Elixir also offered several ways Pace could have determined the weight of the coil before it obtained its own scale, including weighing sheets of aluminum cut from the coil, or using a UPS scale (def's stmt.,¶ 64). Pace did not deny that these options existed. Further, with respect to other products that Pace ordered on a per-pound basis, Pace "[t]rust[ed] the supplier" to make sure it received the amount ordered. Pace plants were instructed to change this practice in 2005 (def's resp. to pl's add. facts, exh. E, p.17).

core was being included in the total weight. Just as the plaintiff in Int'l Star Registry could have easily evaluated the radio station's performance by requesting reports, so too could Pace have made a simple inquiry or weighed a few coils at random to verify Elixir's representations.

The undisputed facts make it apparent that only one conclusion can be drawn: Pace did not exercise ordinary diligence. Because Pace has both failed to show fraudulent inducement and failed to act with ordinary diligence, its claims prior to August 2, 2002 are time-barred.

### B. Timely notice requirement

Elixir next argues that Pace failed to provide it with timely notice of its dissatisfaction with the way Elixir calculated the weight of the aluminum coils. The UCC requires that once the goods have been accepted, a buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607(3)(a). The plaintiff bears the burden of showing that the notice was adequate. Hays v. General Elec. Co., 151 F. Supp. 2d 1001, 1010 (N.D. Ill. 2001) (citing Branden v. Gerbie, 379 N.E.2d 7, 8-9 (Ill. App. 1 Dist. 1978). Whether the notice provided by the plaintiff was reasonable under the circumstances is ordinarily a question of fact, unless no inference could be drawn from the evidence but that the notice was unreasonable. Maldonado v. Creative Woodworking Concepts, Inc., 694 N.E.2d 1021, 1026 (Ill. App. 3 Dist. 1998); *see also* Kedzierski v. Kedzierski, 899 F.2d 681, 683 (7th Cir. 1990). A delay in notifying the defendant may not be unreasonable if it does not prejudice him. Maldonado, 694 N.E.2d at 1026.

Pace responds that it did not become aware of the weight discrepancy until 2005. As Pace points out, most of the cases Elixir cites in its briefs deal with situations in which the

plaintiff actually knew of the defect and delayed notifying the defendant (plf's resp. to SJ mot., pp. 8-9). However, § 607 may still apply if Pace *should have known* of the discrepancy prior to 2005. *See e.g.* P & F Constr. Corp. v. Friend Lumber Corp. of Medford, 575 N.E.2d 61 (Mass. App. Ct. 1991) (door units shipped to plaintiff were "susceptible to inspection" and should have been measured by plaintiff sooner than three and-a-half months after delivery);[4] Wilke Metal Prod., Inc. v. David Architectural Metals, Inc., 236 N.E.2d 303 (Ill. App. 1 Dist. 1968) (where plaintiff failed to inspect the window frames when delivered to see if they were manufactured in accordance with the contract, notice he gave six months after he "ought to have known of the alleged breach" was not timely). The more pertinent questions, therefore, are when Pace should have discovered the weight discrepancy, and whether it provided Elixir with reasonable notice after that time.

Pace argues that P & F Construction is distinguishable because the defects with the doors in that case were "apparent," such as size and color. 575 N.E.2d at 64. However, a buyer may not "receive goods under a contract, appropriate them for his own use, and then defeat an action for the purchase price on the ground that the goods were not of the exact quality or description called for by the contract." In re GGSI Liquidation, Inc., 351 B.R. 529, 603 (Bankr. N.D. Ill. 2006) (quoting Foley & Co. v. Excelsior Stove & Manufacturing Co., 265 Ill. App. 78, 94 (Ill. App. 3 Dist. 1932)). Under the UCC, goods are deemed accepted when the buyer "after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity." 810 ILCS 5/2-606(a). Use of delivered goods constitutes acceptance. ACC Chemical Co., Inc. v. Old Dutch Materials Co., 633 F.Supp. 703, 704-705 (N.D. Ill. 1986); *see also* In re GGSI, 351 B.R.

---

[4] Like Illinois, Massachusetts has incorporated the UCC into its law.

at 603 (buyer of a printing press was not relieved of obligation to pay when he had used it "extensively" for four years before claiming it did not conform to specifications).

Pace began purchasing aluminum coil from Elixir in 1996. Even though Pace did not acquire a scale that could weigh the coil until 2005, it could have taken other steps to ascertain whether it was being charged for the weight of the core, including asking Elixir directly about it, calculating the weight based on the weight of the aluminum cut from the coil, or using a UPS scale. In this respect, even for the shipments made after August 2, 2002, Pace had "a reasonable opportunity" to inspect the aluminum coil. Pace should have discovered that the core weight was being included in the total weight soon after it received the first shipment from Elixir in 1996. Therefore, no inference can be drawn from the evidence but that the notice Pace gave Elixir in 2005 was unreasonable.[5]

Moreover, the delay in notifying Elixir of the alleged breach was unreasonable because it prejudiced Elixir. It would be one thing to raise an issue not specifically addressed in the contract early on in the relationship. Indeed, "[a] principal purpose underlying the obligation ... to make a seller aware within a reasonable time that its goods do not conform, is to prepare the ground for working out a commercial dispute through compromise." P & F Construction, 575 N.E.2d at 63. Had Pace complained early on, Elixir could have decided whether to accommodate Pace's request or adjust its prices. But it is another thing for Pace to wait almost ten years after it began ordering, and two years after it stopped ordering, aluminum coil from Elixir, to ask for a substantial sum of money back. As a matter of law, therefore, Pace did not provide reasonable notice to Elixir of the alleged breach.

---

[5] Because we hold that Pace did not provide notice of the alleged breach within a reasonable time under the UCC, we need not address whether the 48-hour notice provision in Elixir's Standard Terms and Conditions of Sale ("Standard Terms sheet") would operate to bar Pace's claims.

## C. Implied duty of good faith and fair dealing

As part of its breach of contract claim, Pace alleges that Elixir breached its implied duty of good faith and fair dealing (plf's am. cplt., ¶ 13). The UCC imposes an obligation of good faith in the performance of all contracts under its domain. 810 ILCS 5/1-203. This duty, however, only guides the construction of contracts and does not create independent duties of the contracting parties. Echo, Inc. v. Whitson Co., Inc., 121 F.3d 1099, 1106 (7th Cir. 1997) (applying Illinois law). Therefore, Illinois law does not recognize independent claims based on breach of any implied duty of good faith. Id. at 1105-1106. As the Seventh Circuit explained:

> "Good faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties. When the contract is silent, principles of good faith-such as the UCC's standard of honesty in fact, UCC § 1-201(19), and the reasonable expectations of the trade, UCC § 2-103 . . . fill the gap.

Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, 212 F.3d 373, 382 (7th Cir. 2000) (quoting Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1357 (7th Cir. 1990)). In Brooklyn Bagel Boys, the plaintiff had contracted with the defendant to process and package bagels. Although the defendant was required to provide a non-binding forecast of quantity that would likely be ordered every three months, it was not bound to purchase any specific amount of bagels from the plaintiff. Id. at 376. When the defendant decided to begin manufacturing its own bagels, it gave the plaintiff written notice that it would terminate its orders 90 days later, in accordance with the terms of the contract. The plaintiff contended that the defendant breached its implied duty of good faith and fair dealing by not ordering bagels from it during the 90-day period after the defendant gave notice of termination. In rejecting the plaintiff's claim, the Seventh Circuit found that nothing in the

contract prohibited the defendant from manufacturing its own bagels, and the plaintiff had not shown that this situation reasonably "could not have been contemplated" by the parties. *Id.* at 382. The defendant, therefore, did not breach its implied duty of good faith and fair dealing by terminating its orders prior to the end of the 90-day notice period. *Id.*

Similarly, the undisputed facts here suggest that Pace could have contemplated that Elixir would include the weight of the fiber core in the total weight. Pace's president testified that he was aware that Elixir's supplier of aluminum coil, Nichols, had "for many years" included core weights in the weights for which they billed customers (def's stmt., exh. 1, p. 99). He also knew that Nichols' practice was not unique to Elixir or Pace. *Id.* Pace chose to use Nichols as its manufacturer, with Elixir acting as the middle man (def's stmt., ¶¶ 28-29). Elixir sells aluminum coil to all its customers the same way Nichols does, *i.e.*, by including the weight of the fiber core in the total weight (*id.*, ¶ 32). Nothing in the record suggests that Elixir was taking advantage of Pace or acting in bad faith. We do not agree, therefore, that Elixir breached its implied duty of good faith and fair dealing on this basis.[6]

Pace also argues that Elixir breached its implied duty of good faith and fair dealing because the reasonable expectations of the trade prohibit charging for packaging, which includes items like the fiber core (plf's stmt. of add. facts, ¶ 10). The UCC requires that a usage of trade must have "such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." 810 ILCS 5/1-205. Trade usage is used to attach meaning to contractual terms, not to show one party's subjective understanding of the terms. "It is evidence about what words, phrases, etc.

---

[6] We also disagree with Pace that the contract was unclear on this issue. Presumably, Elixir's Standard Terms sheet is "unclear" because it fails to specify whether the weight of the fiber core would be included in the total weight for each order of aluminum coil. But the fact that the parties to a contract disagree about its meaning does not necessarily mean that it is ambiguous. Brooklyn Bagel Boys, 212 F.3d at 378 n. 2 (citation omitted).

mean to a community, not merely to a pair of individuals." <u>Bristow v. Drake Street, Inc.</u>, 41 F.3d 345, 352 (7th Cir. 1994).

There are two problems with Pace's contention. First, the sources Pace cites to establish an industry standard are insufficient to establish such a regularity of observance as to show how a "community," as opposed to a "pair of individuals," understands the industry standard (plf's stmt. of add. facts, ¶ 10). Although the Pace employees whose statements Pace cites may have had experience in the industry, they are still current or former employees of plaintiff. Pace's other source, a web page from the Oregon Department of Agriculture's web site regarding packaging standards, offers a useful explanation, but it is hardly sufficient to meet the high standard for establishing widespread trade usage (plf's stmt. of add. facts, exh. G).[7]

Second, even if Pace could demonstrate an industry standard, it has failed to demonstrate the applicability of this industry standard to the aluminum coil at issue here. Pace does not deny Elixir's facts about the functionality of the core.[8] These facts demonstrate that there are benefits to buying aluminum in coil form, and therefore it is questionable whether the core should be considered packaging. Pace has therefore not met its burden of demonstrating that the reasonable expectations of the trade dictate that the weight of the core should be included in the total weight of an aluminum coil shipment.

---

[7] Moreover, it does not appear that the web page would be admissible at trial, as it is hearsay not falling within any exception under Fed.R.Evid. 803. Therefore, it is not proper evidence for a summary judgment briefing. <u>Hemsworth v. Quotesmith.com, Inc.</u>, 476 F.3d 487, 490 (7th Cir. 2007). Even if it were admissible, the persuasive value of a document from another state's agriculture department is low.

[8] As stated above, these facts include the following: The coil form gives the customer more flexibility in deciding what length to cut the aluminum (def's stmt., ¶ 16). The fiber core helps the aluminum coil maintain its shape and helps ensure the maintenance of the product (<u>Id.</u>, ¶ 19). It ensures that the inner diameter of the coil is, and remains, properly sized to fit customer equipment, such as a decoiler, for subsequent processing (<u>Id.</u>, ¶ 19). Pace specified a particular size for the diameter of the core so that it would fit on Pace's decoiling machines (<u>Id.</u>, ¶ 24). Finally, aluminum coil is less expensive than aluminum sheets (<u>Id.</u>, ¶ 16).

## II. Unjust enrichment

In response to Pace's claim that Elixir would be unjustly enriched if it were permitted to keep the money it received by allegedly overcharging Pace, Elixir argues that the existence of the contract precludes the unjust enrichment claim. Unjust enrichment is an equitable remedy predicated on the principle that one should not be unjustly enriched at another's expense. 12 Ill. Law & Prac. Contracts § 6. The right to recover on a constructive contract arises by implication of law wholly apart from the usual rules relating to contracts. *Id.*

Under Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties. First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir. 1985). The reason for this rule is to prevent parties to a contract from attempting to shift the risks they assumed under the contract when their expectations are not realized. Industrial Lift Truck Serv. Corp., Inc. v. Mitsubishi Int'l. Corp., 432 N.E.2d 999, 1002 (Ill. App. 1 Dist. 1982). This is true even when the contract does not address the specific issue in contention. *Id.*

Here, the Standard Terms sheet did not specify whether the weight of the core would be included in the total weight of each shipment.[9] However, the sheet clearly stated that "[t]hese terms and conditions constitute the entire contract between Elixir and Buyer with respect to Elixir's sale of the invoiced goods." Thus, the presence of a contract precludes Pace's unjust enrichment claim. Pace bore the risk of allowing the contract to be silent on the issue of weight, and it cannot now modify it on an unjust enrichment theory.

---

[9] We assume that none of Elixir's invoices specified how the weight would be calculated, but none was produced.

## Conclusion

For reasons stated herein, defendant's motion for summary judgment is granted.

*[signature]*
JAMES B. MORAN
Senior Judge, U. S. District Court

Jan. 27, 2009.